Stewart, J.
The question before us is whether the trial court was correct in charging the jury to the effect that defendant was entitled to disregard the stop sign on Fulton street just west of Eighteenth street, for the reason that the letters on such stop sign were only five inches in height.
Eighteenth street was, by ordinance, designated a through street, and the stop sign was erected on May 22, 1939, and has been there continuously since. On that date the authority of a municipality to create additional main thoroughfares was conferred by former Section 6310-32, Genei’ai Code (114 Ohio Laws, 161), which read:
“Local authorities shall have the right to designate by ordinance or resolution additional main thoroughfares and to designate what vehicles shall have the right of way at intersections of main thoroughfares; provided, however, that legible and appropriate signs be erected along the roads and highways intersecting such main thoroughfares, and that such signs outside the corporate limits of a municipality, shall *411 not bo nearer than one hundred feet from such intersection. ’ ’
The sign which was on Fulton street the evening of the accident with which this ease is concerned met the specification of the statute that “legible and appropriate signs shall be erected,” and Eighteenth street became a main thoroughfare and continued to be so unless the Uniform Traffic Act, which became effective September 6, 1941, destroyed the effect of the ordinance which had made Eighteenth street a main thoroughfare.
It is claimed by defendant that the provisions of the Uniform Traffic Act which are applicable to this case are Section 6307-6, parts of Section 6307-7, and Section 6307-63, General Code.
Section 6307-6 reads:
“The provisions of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this act unless expressly authorized herein.”
Section 6307-7 reads in part:
“ (a) The provisions of this act shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from—
l i % % *
“6. Designating any highway as a through highway and requiring that all vehicles, trackless trolleys and streetcars stop before entering or crossing the same or designating any intersection as a stop intersection and requiring all vehicles, trackless trolleys and streetcars to stop at one or more entrances to such intersection ;
i Í * * *
“ (b) No ordinance or regulation enacted under sub *412 divisions 4, 5, 6, 7, or 9 of this section shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be most appropriate. ’ ’
Section 6307-63, which is claimed by defendant to contain the crux of the question involved in the present case, reads:
“(a) All state routes and all sections of streets and highways on which are operated streetcars, trackless trolleys and other electric cars, or motor coaches for carrying passengers for hire along a fixed or regular route under authority granted by the municipal corporation in which such route lies, are hereby designated as through highways provided that stop signs shall be erected at all intersections with such through highways by the state highway department as to highways under its jurisdiction and by local authorities as to highways under their jurisdiction; provided, however, that where two or more through highways intersect and no traffic control signal is in operation stop signs shall be erected at one or more entrances thereto by the department or local authorities having jurisdiction.
“(b) The department with reference to state highways, and local authorities with reference to other highways under their jurisdiction may designate additional through highways and shall erect stop signs on all streets and highways intersecting such through highways, or may designate any intersection as a stop intersection and shall erect like signs at one or more entrances to such intersection.
“(c) Every said sign shall bear the word ‘stop’ in letters not less than six inches in height. Every stop sign shall be located as near as practicable at the property line of the highway at the entrance to which the stop must be made, or at the nearest line of the cross *413 walk thereat, or, if none, at the nearest line of the roadway.
‘ ‘ (d) Every operator of a vehicle, streetcar or trackless trolley shall stop at such sign or at a clearly marked stop line before entering an intersection except when directed to proceed by a police officer or traffic-control signal. ’ ’
It is contended by defendant that, since the Uniform Traffic Act provides that a municipality can designate a through highway but must erect stop signs on all streets and highways intersecting or entering such through highway, and that every such sign must bear the word, “stop,” in letters not less than six inches in height, Eighteenth street was not a through street on the day of the collision in which plaintiff was injured.
In reversing the judgment of the trial court, the Court of Appeals was of the opinion that with reference to the designation of through streets by a municipality the Uniform Traffic Act was not retroactive and that main thoroughfares which had been duly designated as such under former Section 6310-32, General Code, remain so as long as the stop signs are legible and appropriate even though the letters are less than six inches in height.
We are of the opinion that the reasoning of the Court of Appeals is correct.
It will be noted that Section 6307-6 provides for the uniformity of the traffic act and that no local authorities shall enact or enforce any rule or regulation in conflict therewith. It is a reasonable interpretation of such provision that no regulation or rule in conflict with the Uniform Traffic Act can be enacted and enforced after the effective date of the section. The same reasoning is applicable to Section 6307-7.
We agree with defendant as to the construction of the words, “most appropriate,” in paragraph (b) of *414 Section 6307-7 in that they are applicable to the location rather than to the design of the sign. However, that has no bearing upon the question whether the designation of through highways by local authorities under the Uniform Traffic Act has a prospective and not a retroactive operation.
Section 6307-63, paragraph (b), provides for the designation by local authorities of additional through highways and the erection of stop signs on all streets and highways intersecting such through highways. It is contended by defendant that the additional highways refer to those in addition to the ones provided for in paragraph (a) of that section. However, it can well be argued that the word, “additional,” refers to highways already'in existence, as the General Assembly, if it had meant otherwise, might better have used the word, “other,” rather than, “additional.”
There is no language in the Uniform Traffic Act making the provisions for the designation of main thoroughfares in municipalities retroactive, and in the absence of such language it would seem inconceivable that such provisions were to void all the main thoroughfares which had been so designated by municipalities under former Section 6310-32, General Code.
There must have been many hundreds of such main thoroughfares in existence when the Uniform Traffic Act became effective and if they were all voided at that instant the intersections on such former main thoroughfares would have become veritable death traps. If Eighteenth street was not a main thoroughfare on the day of the accident in the present case, it could not have been one the day after the effective date of the Uniform Traffic Act.
In interpreting the meaning of a legislative enactment, which includes the question as to whether it is retroactive, the court must take into consideration the conditions and circumstances .with which the legis *415 lative body was faced at the time it enacted the legislation.
The Uniform Traffic Act became effective just prior to the entrance of the United States into World War II, at a time when metals and other materials were becoming scarce for other than war preparation and at a time when the General Assembly must have known of the multitude of main thoroughfares which had been so designated by municipalities all over Ohio.
It is difficult to believe that under such circumstances the General Assembly could have intended the provision of Section 6307-63 (c), General Code, with reference to the letters on a stop sign being not less than six inches high, to be other than a prospective enactment so far as main thoroughfares in municipalities are concerned.
Consider the situation in the present case. Eighteenth street had been duly designated a main thoroughfare by the city of Columbus when the stop sign with letters five inches high was erected on May 22, 1939. That sign met the requirements of former Section 6310-32, General Code, in effect on such date, as to being legible and appropriate. If neither Eighteenth street nor Fulton street had been a main thoroughfare, defendant, driving east on Fulton street, would have had the right of way over the driver of the automobile in which plaintiff was riding south on Eighteenth street.
Can one conceive of a more vicious trap than an intersection of a main thoroughfare, which had been made so and designated in accordance with state law, with a thoroughfare having stop signs which might be ignored because of only the fact that the letters thereon were one inch shorter than those required by the present .act?
We hold that the provision of Section 6307-63 (c) as to ihe height of the letters in stop signs is prospective *416 in reference to through thoroughfares designated by municipal authorities.
Defendant argues that this court has decided that ordinances which are in conflict with statutes are invalid and cites the cases of Schneiderman, an Infant, v. Sesanstein, 121 Ohio St., 80, 167 N. E., 158, 64 A. L. R., 981, and Schwarts, Admx., v. Badila, Jr., 133 Ohio St., 441, 14 N. E. (2d), 609.
In the former case it was held:
“An ordinance of a municipality which prescribes a manner of driving or a rate of speed of automobiles in conflict with the provisions of the statute is invalid.”
In the latter case it was held:
“An ordinance of a municipality which prescribes a manner of driving or a rate of speed of automobiles in conflict with the provisions of the statute is invalid. (Schneiderman v. Sesanstein, 121 Ohio St., 80, approved and followed.)”
We are in accord with the law laid down in the above cases but do not see its applicability to the question here.
A manner-of-driving or a rate-of-speed enactment even though considered prospective in operation simply requires that the manner of driving or rate of speed accords with the enactment after its effective date and any other provision as to manner of driving or rate of speed simply is supplanted. Thus, we are of the opinion that such legislation is not analogous to the legislative question with which we are here concerned.
It is fundamental that with reference to the Uniform Traffic Act municipalities cannot pass ordinances in conflict therewith, but the question before us relates only to the prospective or retroactive feature of that part of the act with which the present case is concerned.
We likewise are cognizant of the proposition that where a legislative enactment is plain and unam *417 biguous in its terms the courts must give it effect regardless of the hardships or dangers which will attend, its enforcement, and if the General Assembly had made the matter of the six-inch letters in the stop sign applicable retroactively it would have to be so given effect regardless of the dangers flowing therefrom. However, since no retroactive provision was placed in the law and since the Uniform Traffic Act was adopted to promote safety and not be a menace to it, we are of the opinion that the charge of the trial court of which complaint is made was erroneous. Accordingly, the judgment of the Court of Appeals must be and is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Middleton, Matthias and Hart, .1 J., concur.,