[This opinion has been published in *Ohio Official Reports* at 67 Ohio St.3d 579.]

GEAUGA COUNTY BOARD OF COMMISSIONERS ET AL., APPELLANTS, *v*. MUNN
ROAD SAND & GRAVEL ET AL., APPELLEES.

[Cite as *Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel*,
1993-Ohio-55.]

*Motor vehicles—Streets and highways—Traffic laws—R.C. 4511.07 is not an
express grant of authority to a board of county commissioners to regulate
traffic.*

R.C. 4511.07 is not an express grant of authority to a board of county
commissioners to regulate traffic.

(No. 92-1503—Submitted September 15, 1993—Decided November 17, 1993.)

APPEAL from the Court of Appeals for Geauga County, No. 91-G-1650.

———————————

{¶ 1} In January 1990, the Geauga County Board of Commissioners ("the
county commissioners") enacted Geauga County Resolution No. 90-9, which
banned through truck traffic on certain roads in Geauga County. Not included in
the ban was the part of Auburn Road stretching between State Route 87 and U.S.
Route 422.

{¶ 2} Plaintiffs-appellants, the county commissioners, the county engineer
and the county itself (collectively "Geauga County"), contemplating a resolution
similar to Resolution No. 90-9 to prohibit through truck traffic on Auburn Road
between State Route 87 and U.S. Route 422, filed a complaint for a declaratory
judgment in common pleas court. Named as defendants were appellees Kuhnle
Brothers, Inc. and its related business entities, Munn Road Sand & Gravel and T&K
Kuhnle Company (collectively "Kuhnle Bros."), who operate trucks on the roads
of Geauga County.

**{¶ 3}** Geauga County asked the trial court to construe a settlement agreement it had entered into with Kuhnle Bros. regarding the use of Auburn Road, and to declare that the county commissioners would not be in breach of the terms of the settlement if they enacted a resolution banning through truck traffic on Auburn Road between State Route 87 and U.S. Route 422. The agreement had been entered into in May 1989 to settle a previous lawsuit brought by Kuhnle Bros. against Geauga County challenging a weight limitation regulatory scheme imposed by the county commissioners on the roadways of the county.

**{¶ 4}** Kuhnle Bros. answered and filed a two-count counterclaim. In Count I of the counterclaim, Kuhnle Bros. asked for a determination that banning through truck traffic on Auburn Road between State Route 87 and U.S. Route 422 would be arbitrary, unreasonable and unlawful. In Count II of the counterclaim, Kuhnle Bros. asked for a determination that Resolution No. 90-9 is beyond the county commissioners' statutory authority, and is unlawful and unenforceable.

**{¶ 5}** After the trial court dismissed Geauga County's complaint and Count I of Kuhnle Bros.' counterclaim, Count II of the counterclaim was tried to the court. The trial court determined that, even though "obviously unfair to defendants, [Resolution No. 90-9] is not unlawful" and that the county commissioners acted within their statutory authority. The trial court found that "Resolution 90-9 is a valid regulation of the 'use of certain streets by vehicles ***' under the authority of R.C. 4511.07(I)."

**{¶ 6}** Kuhnle Bros. appealed to the Court of Appeals for Geauga County, which reversed the judgment of the trial court and entered judgment for Kuhnle Bros., finding that Resolution No. 90-9 was invalid. The court of appeals held that R.C. 4511.07 is not an express grant of authority to a board of county commissioners to regulate traffic, and that without an express grant of power, Geauga County was without authority to enact Resolution No. 90-9.

2

**{¶ 7}** The cause is now before this court pursuant to the allowance of a motion to certify the record.

————————————

*David P. Joyce*, Geauga County Prosecuting Attorney, and *David Lubecky*, Assistant Prosecuting Attorney, for appellants.

*Thrasher, Dinsmore & Dolan* and *David M. Ondrey*, for appellees.

*Dean Holman*, Medina County Prosecuting Attorney, and *William L. Thorne*, Assistant Prosecuting Attorney, urging reversal for *amici curiae*, County Commissioners' Association of Ohio and County Engineers' Association of Ohio.

————————————

**ALICE ROBIE RESNICK, J.**

**{¶ 8}** This case presents one issue for our consideration: Is R.C. 4511.07 an express grant of authority to a board of county commissioners to regulate traffic in the county? For the reasons which follow, after careful review, we determine that it is not. We affirm the judgment of the court of appeals.

**{¶ 9}** The county commissioners relied on R.C. 4511.07(I) as their authorization to enact Resolution No. 90-9 to prohibit through truck traffic on certain county roads. R.C. 4511.07 provides:

"Sections 4511.01 to 4511.78, 4511.99, and 4513.01 to 4513.37 of the Revised Code *do not prevent* local authorities from carrying out the following activities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power:

"* * *

"(I) Regulating the use of certain streets by vehicles, streetcars, or trackless trolleys." (Emphasis added.)

**{¶ 10}** The court of appeals, focusing on the words "do not prevent," in the first paragraph of R.C. 4511.07, determined that R.C. 4511.07 is not an express authorization to regulate traffic. In so ruling, the court of appeals resolved this case

on a ground fundamentally different from that urged by Kuhnle Bros. Although Kuhnle Bros. argued in the court of appeals that Resolution No. 90-9 was beyond the authority of the county commissioners to enact, Kuhnle Bros. did not specifically argue that R.C. 4511.07 is not an express authorization to a board of county commissioners to regulate traffic.[1]

{¶ 11} Prior to the issuance of the court of appeals' opinion, all parties to this appeal apparently assumed that R.C. 4511.07 *does* provide an express grant of power to a county. The court of appeals, in resolving this case, appears to have taken a view of R.C. 4511.07 which departs from previous interpretations of the statute. We thus must determine the correct construction of R.C. 4511.07, as it applies to the "local authorities" in this case, Geauga County.

{¶ 12} As a starting point for our analysis, we consider the scope of the powers which may be exercised by different types of political subdivisions in our state. While municipalities and counties (along with certain other entities) are considered "local authorities" for purposes of regulating traffic within their respective jurisdictions, see R.C. 4511.01(AA), the traffic regulation powers which a municipality and a county may exercise are by no means coextensive.

{¶ 13} Municipalities, pursuant to the powers granted by Section 3, Article XVIII of the Ohio Constitution (the so-called Home Rule Amendment), "have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Before 1912, the time of the adoption of the Home Rule Amendment, municipalities could exercise only those powers delegated by statute. The adoption of Section 3, Article XVIII of the Constitution worked a

---

1. Kuhnle Bros.' principal arguments at the court of appeals were: (1) that R.C. 4511.07(I) gives a board of county commissioners the power to regulate only the use of streets, and that Resolution No. 90-9 was a prohibition, not a regulation; and (2) that the General Assembly, by using the word "streets" in R.C. 4511.07(I), did not intend to allow a board of county commissioners to regulate county roads.

fundamental change upon the powers of municipalities. See *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245, 255, 140 N.E. 595, 598. In *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, paragraph one of the syllabus, the court held: "Municipalities in Ohio are authorized to adopt local police, sanitary and other similar regulations by virtue of Section 3, Article XVIII, of the Ohio Constitution, and derive no authority from, and are subject to no limitations of, the General Assembly, except that such ordinances shall not be in conflict with general laws."

{¶ 14} Counties, on the other hand, may exercise only those powers affirmatively granted by the General Assembly. *State ex rel. Shriver v. Belmont Cty. Bd. of Commrs.* (1947), 148 Ohio St. 277, 35 O.O. 286, 74 N.E.2d 248, paragraph two of the syllabus; *Portage Cty. Bd. of Commrs. v. Gates* (1910), 83 Ohio St. 19, 30, 93 N.E. 255, 259; *Lake Cty. Commrs. v. Ashtabula Cty. Commrs.* (1873), 24 Ohio St. 393, 401. Therefore, in the absence of a specific statutory grant of authority, a board of county commissioners is powerless to enact legislation.[2]

{¶ 15} The method for determining whether a particular power is within the authority of a political subdivision is completely different for a non-charter county than it is for a municipality. A county is presumed *not to have authority* to regulate in a particular area, unless a statute affirmatively authorizes the regulation. For a

---

2. We observe that a municipality, regardless of whether it has adopted a charter, possesses home rule powers due to its status as a municipality by virtue of Section 3, Article XVIII. *Perrysburg v. Ridgway* (1923), 108 Ohio St. 245, 140 N.E. 598, paragraphs four and five of the syllabus.

Although counties do not have home rule powers simply due to their status as counties, the Ohio Constitution does provide procedures through which counties may acquire some home rule powers. See Section 1, Article X (allowing municipalities to transfer powers to a county); Section 3, Article X (allowing a county, by following the proper procedures in framing and adopting a charter, to exercise "powers vested by the constitution or laws of Ohio in municipalities"). Pursuant to Section 3, Article X, a county charter providing for the exclusive exercise of municipal powers shall become effective only when approved by the four special majorities provided for in Section 3 of Article X.

Our consideration of the scope of powers which a county may exercise is based on the assumption that the county in question has not acquired municipal powers through the procedures of Article X. Our analysis in this case would be very different if Geauga County possessed home rule powers (particularly traffic regulation powers) pursuant to Article X.

municipality, however, the presumption is *in favor of* the authority to regulate.  No specific grant of authority from the General Assembly is necessary.

{¶ 16} Analyzing R.C. 4511.07 in light of the above considerations, we find that the "do not prevent" provision in the first paragraph of the statute obviously is phrased with regard to the powers which may be exercised by a municipality.  A municipality may regulate in an area whenever the regulation is not in conflict with general laws.  See *Struthers*, *supra*, paragraph one of the syllabus.  R.C. 4511.07, by providing that local authorities are *not prevented* from enacting certain regulations, is couched in terms of the conflict analysis of cases such as *Struthers*.  The statute, by this language, takes a home rule approach, and is stated in home rule terms.

{¶ 17} In our consideration of whether R.C. 4511.07 serves as a specific grant of authority to a county, we encounter the unquestioned proposition that a county does not have authority to regulate unless the General Assembly affirmatively grants it.  The grant must be in clear and certain terms.  Because the presumption is against authority, the grant must be strictly construed.  R.C. 4511.07, by stating that certain statutes "do not prevent" local authorities from regulating, effectively provides on its face that those statutes do not stand in the way of regulation in these areas.  This is not the same as providing that a county is authorized to regulate.  Because the statute is phrased in the negative, it does not affirmatively grant powers to a county, which exercises only limited authority.[3]

---

3. When the General Assembly wishes to affirmatively grant power to local authorities to regulate in a particular area, it frequently does so in positive terms.  See, *e.g.*, R.C. 4511.11(A) (local authorities "shall place and maintain traffic control devices"); R.C. 4511.13(C)(5) (local authorities "may *** prohibit a right or a left turn against a steady red signal"); R.C. 4511.21(J) (local authorities "may authorize *** higher prima-facie speeds"); R.C. 5577.08 (a board of county commissioners "shall make rules and regulations governing the weight of vehicle and load and the speed permitted").

**{¶ 18}** In *Columbus v. Webster* (1960), 170 Ohio St. 327, 10 O.O.2d 419, 164 N.E.2d 734, this court considered the validity of a parking regulation enacted by the city of Columbus. After quoting Section 3, Article XVIII of the Ohio Constitution, the court stated: "[O]ur Constitution gives to municipalities the broad authority to adopt police regulations (city ordinances) which are not in conflict with general laws. Not only is the ordinance in question not in conflict with such laws, it is in fact authorized by Section 4511.07, Revised Code, quoted above." *Id.* at 330, 10 O.O.2d at 421, 164 N.E.2d at 736. The issue in *Webster* was *not* whether Columbus had the authority to regulate traffic. As the court recognized, a municipality has the authority, as part of its home rule powers, to enact a police regulation which does not conflict with general laws of the state.

**{¶ 19}** To the extent that *Webster* seemed to indicate that a municipality's authority to regulate traffic comes from R.C. 4511.07, we clarify *Webster*'s dictum regarding the statute. R.C. 4511.07 provides that the municipality's exercise of power in this way is *not prevented* by certain sections of R.C. Chapters 4511 and 4513. While the effect of R.C. 4511.07 in a case such as *Webster*, involving a municipality, could be viewed as very much like a grant of authority to the municipality, the municipality does not need the grant of authority because it already possesses it pursuant to its home rule powers. The power comes from the Ohio Constitution; it does *not* come from R.C. 4511.07.

**{¶ 20}** When the scope of a *municipality's* powers is at issue, a provision that certain statutes "do not prevent" regulation is effectively the same as specifically providing that no conflict exists with general laws of the state when a municipality regulates in the enumerated areas. See *Shapiro v. Butts* (1951), 155 Ohio St. 407, 418-419, 44 O.O. 381, 386, 99 N.E.2d 173, 178 (Taft, J., concurring) (G.C. 6307-7 [the prior version of R.C. 4511.07] apparently "was put into the Uniform Traffic Act in recognition of the provisions of Section 3 of Article XVIII of the Constitution authorizing municipalities 'to adopt and enforce within their

limits such local police *** and other similar regulations, as are not in conflict with general laws.'").[4] But, when the scope of a *county's* powers is at issue, as in the case before us, R.C. 4511.07 does not have the same effect, because a county generally has no home rule powers.

{¶ 21} Appellants argue that the final two paragraphs of R.C. 4511.07 (which refer to ordinances, resolutions, and regulations "enacted under" R.C. 4511.07) serve as a strong indication that the General Assembly intended to affirmatively grant powers through R.C. 4511.07. See, also, R.C. 4511.071(A) and (C) (regulation "enacted under" R.C. 4511.07) and 4521.02(A) (regulation "authorized pursuant to" R.C. 4511.07).[5] We realize that when a regulation is "enacted under" a statute, that is the equivalent of enacting the regulation pursuant to the authority granted by the statute. However, we cannot ignore the impact of the "do not prevent" language. In our view, the "enacted under" provisions in the statutes referring to powers authorized by R.C. 4511.07 are drafted with municipalities in mind in the same way that R.C. 4511.07's first paragraph is phrased in terms appropriate for home rule municipalities, and not in terms appropriate for governmental bodies without home rule powers. In addition, whether the legislature intended to affirmatively grant to *all* local authorities the

4. In addition, one commentator, in considering the conflict analysis of Section 3, Article XVIII as applied in cases since *Struthers*, cites *Webster* as authority for the proposition that there is "an apparent recognition of a power in the General Assembly to authorize municipalities to conflict with state measures." Vaubel, Municipal Home Rule in Ohio, Part III (1976), 3 Ohio N.U.L.Rev. 643, 686.

5. The Ohio Attorney General, in 1979 Ohio Atty.Gen.Ops. No. 79-058, at 2-197, observed that "[t]he language used in R.C. 4511.07 does not, at first glance, appear to be an affirmative delegation of authority. The words '[these statutes] do not prevent local authorities from carrying out the following activities' might be construed merely as a statement that the general statutes were not intended to be exclusive." The Attorney General went on to construe the "enacted under" language of the last paragraph of the version of R.C. 4511.07 in effect at the time as an implication that the General Assembly intended R.C. 4511.07 to be an enabling statute, and concluded that R.C. 4511.07 was a grant of authority to local authorities (including a board of county commissioners) to regulate traffic. *Id.* at 2-198. The court of appeals specifically rejected this conclusion, and by our holding in this case, so do we.

powers enumerated in R.C. 4511.07 is a question which cannot be totally answered by considering provisions which refer to R.C. 4511.07. The literal wording of the first paragraph of the statute, when considered in tandem with the truism that a county possesses only those powers expressly granted by the General Assembly, leads us to conclude that R.C. 4511.07 is not an affirmative grant of power to a county to regulate local traffic.

{¶ 22} We recognize that our holding in this case is at odds with several prior precedents which the county commissioners relied upon in believing they had authority from the General Assembly to enact Resolution No. 90-9. As is explained above, cases involving R.C. 4511.07 and municipalities are distinguishable from cases involving R.C. 4511.07 and a county. Moreover, previous interpretations by lower courts and others who considered R.C. 4511.07 do not control our interpretation of a statute which by its explicit terms is not a grant of authority to a county. If the General Assembly wishes to affirmatively grant the authority to *all* local governments to regulate in some or all of the areas enumerated in R.C. 4511.07, that is its prerogative, either by amending this statute or by enacting a new one.

{¶ 23} For all the foregoing reasons, we hold that R.C. 4511.07 is not an express grant of authority to a board of county commissioners to regulate traffic. In the absence of specific statutory authority granting a county the power to ban through trucks on county roads, we must affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

———————————