[Cite as *Ross Cty. Bd. of Commrs. v. Roop*, 2011-Ohio-1748.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| BOARD OF COUNTY COMMISSIONERS OF ROSS COUNTY, OHIO, | : | Case No. 10CA3161 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | **Released: April 6, 2011** |
| vs. | : | |
| | : | |
| LEONARD M. ROOP, et al., | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| Defendants-Appellants. | : | |

_____

APPEARANCES:

Leo J. Hall, Margulis, Gussler and Hall, Ashville, Ohio, for Appellants.

Matthew S. Schmidt[1], Ross County Prosecutor, and Judith Heimerl Brown, Ross County Assistant Prosecutor, Chillicothe, Ohio, for Appellee.

_____

McFarland, J.:

{¶1} This is an appeal from a judgment by the Ross County Court of Common Pleas issuing Appellee, Ross County Board of Commissioners, an injunction requiring Appellants, Leonard Roop, et al., to remove a non-residential structure located in the Indian Creek Floodway. On appeal, Appellants contend that 1) it was error for the court to rule that R.C. 307.37, as it existed when Appellants built their building, permitted a county having

---

[1] Since the filing of this appeal, Matthew S. Schmidt is now the Ross County Prosecuting Attorney rather than Michael M. Ater.

no county building code to pass floodplain regulations for participation in the National Flood Insurance Program; 2) it was error for the court to rule that, because the floodplain regulations in question were published before their adoption, it was irrelevant to the issue of constructive notice that the regulations were not put in the subdivision regulations as required by enabling resolution; 3) because the only statutory authority for a board of county commissioners to seek an injunction is in R.C. 307.40, and that section limits the authority to injunctions pertaining to residential property, it was error for the court to grant a mandatory injunction for the removal of Appellants' nonresidential personal use building; and 4) it was error for the court to grant a mandatory injunction where Appellee's testimony showed the only real threat was an increase in insurance rates, claiming that such harm is not irreparable because it is remedied by an award of money damages and therefore the extraordinary remedy of mandatory injunction is not warranted.

{¶2} Because resolutions 91-114 and 92-152 were valid and enforceable despite not being incorporated into a county building code or the county subdivision regulations, we overrule Appellants' first and second assignments of error. However, because we conclude that R.C. 307.40 applies to residential structures only, we sustain Appellants' third

assignment of error and reverse the decision of the trial court. As such, our disposition of Appellants' third assignment of error renders the fourth assignment of error moot.

### FACTS

{¶3} In April 1991, the Ross County Board of Commissioners enacted Resolution No. 91-114 which provided regulations for flood hazard areas, for participation in the National Flood Insurance Program, pursuant to R.C. 307.37 and 307.85. In October 1992, Resolution No. 91-114 was amended by Resolution No. 92-152, which extended the identified flood hazard area to include the Indian Creek area, where Appellants' property is located. These resolutions essentially imposed rules and regulations regarding construction in the flood hazard areas, and also required that development permits be obtained prior to the start of construction.

{¶4} On January 3, 2002, after driving by Appellants' property and noticing the construction of a new building, the Ross County Flood Plain Administrator sent Appellant, Leonard Roop, a letter informing him that the building he was constructing was located in the Indian Creek Floodway and that construction in the area was prohibited under Resolution No. 91-114. In

the letter, Roop was instructed to stop construction immediately, and was also advised of his right to request a variance.[2]

{¶5} On January 30, 2002, the Ross County Board of Commissioners filed a complaint against Appellants, Leonard and Lori Roop. The complaint sought a preliminary and permanent injunction for the removal of Appellants' non-residential personal use building, pursuant to R.C. 307.37, 307.40 and Civ.R. 65, claiming the construction of the building was in violation of floodplain regulations and the public would suffer irreparable harm if the violation was not abated. Appellee defended against the complaint on the theory that Appellants were trying to enforce an illegally adopted resolution.

{¶6} On August 4, 2004, Appellants filed a motion for summary judgment, which was subsequently denied. The parties eventually agreed to submit the case to the Magistrate on the legal issue of whether the floodplain regulations were properly enacted and enforceable. When the magistrate held that the regulations were valid, Appellants attempted to appeal the decision to this Court; however, we dismissed the appeal for lack of a final, appealable order. The matter finally proceeded to a bench trial on March 25, 2009. The only witness presented at the trial was Keith Putnam, the Ross

---

[2] The ultimate denial of Appellants' request for a variance was the subject of a previous appeal to this Court, wherein we upheld the denial of Appellants' variance request . *Roop v. The Floodplain Regulations Variance Bd. of Ross County*, Ross App. No. 03CA2707, 2003-Ohio-5522.

County Flood Plain Administrator.  After hearing the evidence presented at trial, the magistrate issued a decision indicating that the floodplain regulations at issue were properly enacted under R.C. 307.37 and 307.85 and that Appellants' construction of their nonresidential structure was in violation of those regulations.  Relying on the testimony of Keith Putnam that was introduced at trial, the magistrate ruled that the construction would cause irreparable harm if allowed to remain and granted Appellee a permanent injunction, ordering Appellants to remove their nonresidential structure.

{¶7} On June 8, 2009, Appellants filed objections to the magistrate's decision; however, on March 31, 2010, the trial court issued an entry overruling the objections to the magistrate's decision, adopting the magistrate's decision and ordering a permanent injunction against Appellants.  It is from this decision that Appellants bring their timely appeal, assigning the following errors for our review.

ASSIGNMENTS OF ERROR

"I.    IT WAS ERROR FOR THE COURT TO RULE THAT R.C. 307.37, AS IT EXISTED WHEN APPELLANTS BUILT THEIR BUILDING, PERMITTED A COUNTY HAVING NO COUNTY BUILDING CODE TO PASS FLOODPLAIN REGULATIONS FOR PARTICIPATION IN THE NATIONAL FLOOD INSURANCE PROGRAM.

II.     IT WAS ERROR FOR THE COURT TO RULE THAT, BECAUSE THE FLOODPLAIN REGULATIONS IN QUESTION WERE PUBLISHED BEFORE THEIR ADOPTION, IT WAS IRRELEVANT TO THE ISSUE OF CONSTRUCTIVE NOTICE THAT THE REGULATIONS WERE NOT PUT IN THE SUBDIVISION REGULATIONS AS RQUIRED BY THE ENABLING RESOLUTION.

III.    BECAUSE THE ONLY STATUTORY AUTHORITY FOR A BOARD OF COUNTY COMMISSIONERS TO SEEK AN INJUNCTION IS IN R.C. 307.40, AND THAT SECTION LIMITS THE AUTHORITY TO INJUNCTIONS PERTAINING TO RESIDENTIAL PROPERTY, IT WAS ERROR FOR THE COURT TO GRANT A MANDATORY INJUNCTION FOR THE REMOVAL OF APPELLANTS' NONRESIDENTIAL PERSONAL USE BUILDING.

IV.    IT WAS ERROR FOR THE COURT TO GRANT A MANDATORY INJUNCTION WHERE APPELLEE'S TESTIMONY SHOWED THE ONLY REAL THREAT WAS AN INCREASE IN INSURANCE RATES. SUCH HARM IS NOT IRREPARABLE BECAUSE IT IS REMEDIED BY AN AWARD OF MONEY DAMAGES. THE DAMAGE NOT BEING IRREPARABLE, THE EXTRAORDINARY REMEDY OF MANDATORY INJUNCTION IS NOT WARRANTED."

BACKGROUND

{¶8} The National Flood Insurance Program (NFIP) was established pursuant to the National Flood Insurance Act of 1968 and the Flood Disaster Protection Act of 1973, which in part amended the 1968 Act. OAG Op. No. 91.028; citing 42 U.S.C. §§ 4001 et seq. The Federal Emergency Management Agency (FEMA) is responsible for carrying out the National Flood Insurance Program. Id.; citing 42 U.S.C. § 4011 (1988). Federal law

prohibits FEMA from making flood insurance coverage available unless a community has adopted floodplain management regulations that meet minimum NFIP standards and is enforcing these regulations with respect to all development in flood hazard areas. Id.; citing 42 U.S.C. §§ 4012, 4022 (1988); 44 C.F.R. § 60.3 (1990).  As a result of the foregoing, the "Ross County Commissioners adopted Resolution No. 91-114 ('Flood Regulations'), amending the Flood Damage Prevention Regulations of Ross County, for the regulation of flood hazard areas in Ross County.  The Flood Regulations contain many methods for controlling flood risk, which include restricting structures in the floodway itself and on the fringe of the floodway." *Roop*, supra, at ¶2.  On appeal, Appellants challenge the validity of Resolution No. 91-114.

ASSIGNMENTS OF ERROR I AND II

{¶9} Because our analysis of Appellants' first and second assignments of error overlap, we address them in conjunction with one another.  In their first assignment of error, Appellants contend that it was error for the court to rule that R.C. 307.37, as it existed when Appellants built their building, permitted a county having no county building code to pass floodplain regulations for participation in the NFIP.  In their second assignment of error, Appellants contend that it was error for the court to rule that, because

the floodplain regulations in question were published before their adoption, it was irrelevant to the issue of constructive notice that the regulations were not put in the subdivision regulations as required by enabling resolution. Appellee contends that the floodplain resolutions passed by the Ross County Commissioners were properly enacted and enforceable, even though they were not included in a county building code or county subdivision regulations. All of Appellants' assignments of error present questions of law that we will review de novo. See, generally, *State v. Hix* (Jan. 9, 1997), Pike App. No. 96CA575, 1997 WL 15226.

{¶10} The relevant version of R.C. 307.37 which was in effect at the time Appellants constructed their non-residential personal use building provided, in (A)(2) that "a county building code *may* include regulations for participation in the national flood insurance program established in the 'Flood Disaster Protection Act of 1973,' * * *." (Emphasis added). R.C. 307.37(B) additionally provided that "[r]egulations or amendments may be adopted under this section only after public hearing at not fewer than two regular sessions of the board." Further, R.C. 307.85, in its most recent version that was effective September 29, 1995, provides in (A) as follows: "The board of county commissioners of any county may participate in, * * * establishing and operating any federal program enacted by the congress of

the United States, * * * and for such purpose may adopt any procedures and

take any action not prohibited by the constitution of the Ohio nor in conflict

with the laws of this state."

{¶11} A review of the record indicates that the parties stipulated

below that Ross County did not have a building code, as contemplated by

R.C. 307.37(A)(2).  However, the record reveals that the following

legislation was passed, from 1981 and forward, related to floodplain

regulation:

1981:      1981 Ross County Subdivision Regulations, which included an
           Appendix E., (a resolution entitled County Building Permit
           Review System), stated to have been adopted pursuant to H.B.
           664 and in order to become eligible for the sale of subsidized
           flood insurance.  Appendix E. also provided that violators
           would be guilty of a misdemeanor, citing R.C. 307.37-307.40 in
           support).

1987:      Resolution No. 87-137, which amended the Flood Damage
           Prevention Guidelines to provide regulations for flood hazard
           areas.  The language states that the resolution was adopted
           pursuant to R.C. 307.37 and 307.85 and that it adopts
           regulations necessary for participation in the NFIP.  It again
           states that violations are misdemeanors and represents that
           public hearings were held in accordance with R.C. 307.37.

1991:      Resolution No. 91-114, which repealed previous Resolution
           No. 87-137.  This resolution was adopted to provide regulations
           for flood hazard areas, for participation in the NFIP, and states
           it was adopted pursuant to R.C. 307.37 and 307.85.  Although it
           was ordered that this resolution be incorporated in to the
           Subdivision Regulations of Ross County as Appendix E., the
           record indicates that this never occurred.  The record does,

however, indicate that the necessary public hearings were held prior to adoption of the resolution as required by R.C. 307.37.

1992:    Resolution 92-152 did not repeal, but simply amended Resolution No. 91-114 regarding Flood Protection Requirements for Indian Creek. The parties stipulated below that the property in question was located in Indian Creek. Again, the resolution expressed its adoption pursuant to R.C. 307.37 and public hearings were held accordingly.

1996:    Amended Subdivision Regulations of Ross County were adopted which expressly stated in section 103 that "any other regulations previously adopted by the Ross County Board of Commissioners or Ross County Planning Commission shall be deemed to be repealed." However, section 107.01 further stated that "provisions of these regulations shall supplement any and all laws of the State of Ohio, resolutions of the County and Townships * * *." These new subdivision regulations contained no reference whatsoever to the NFIP or participation therein.

{¶12} The above detailed pieces of legislation were all in existence and are applicable to the case sub judice. In our view, resolution nos. 91-114 and 92-152 were properly enacted and govern the construction of Appellant's building in the Indian Creek Floodway. Although R.C. 307.37 stated that counties "may" include floodplain regulation in their county building codes, the express language of that statute did not make that act mandatory. Further, although R.C. 307.37 most specifically deals with the enactment of floodplain legislation, R.C. 307.85 also provides authority for the enactment of such legislation. See, OAG Op. No. 91-028 (reasoning, albeit with regard to regulation of agricultural use buildings not at issue

herein, that even if R.C. 307.37 did not provide authority for floodplain regulation, "R.C. 307.85 provides general authority for a county to participate in the National Flood Insurance Program by adopting procedures or taking actions that are not prohibited by the Ohio Constitution or in conflict with the laws of Ohio."). Opinions released by the Ohio Attorney General are not binding authority, but are considered persuasive authority. *Dickess v. Stephens*, Lawrence App. No. 05CA26, 2006-Ohio-4972 at ¶11; citing, *State ex rel. North Olmstead Fire Fighters Assn. v. North Olmstead* (1992), 64 Ohio St.3d 530, 533, 1992-Ohio-4, 597 N.E.2d 136.

{¶13} Though the resolutions at issue were not included in a county building code and were apparently omitted from the county subdivision regulations, their enactment was within the authority of the county commissioners, and public hearings were held placing affected residents on notice of their existence. See, R.C. 302.13 "Specific powers of board," (boards of county commissioners may "[b]y ordinance or resolution make any rule, or act in any matter not specifically prohibited by general law; provided that, in the case of conflict between the exercise of powers pursuant to this division and the exercise of powers by a municipality or township, the exercise of power by the municipality or township shall prevail * * *.); see, also, OAG Op. No. 84-038 ("[i]t has been previously

noted that R.C. 307.85(A) authorizes a board of county commissioners to perform acts not otherwise statutorily authorized where the performance of such acts is reasonably related to the establishment and operation of a federal program, *provided such acts are not in conflict with the constitutional and statutory laws of this state*.").  (Emphasis added).

{¶14} Thus, because resolution nos. 91-114 and 92-152 were within the authority of the board to enact, were properly published and the subject of public hearings, and were not repealed by the subsequent 1996 subdivision regulation amendments, they were and are valid and enforceable as against Appellants.  As such, we cannot conclude that the trial court erred in finding these resolutions to be valid and enforceable.  Accordingly, Appellants' first and second assignments of error are overruled.

ASSIGNMENT OF ERROR III

{¶15} In their third assignment of error, Appellants contend that because the only statutory authority for a board of county commissioners to seek an injunction is in R.C. 307.40, and that section limits the authority to injunctions pertaining to residential property, it was error for the court to grant a mandatory injunction for the removal of Appellants' nonresidential personal use building.  Appellee counters by arguing that that R.C. 307.40 does provide authority for the injunction that was granted, and also relies on

section 3.7 contained in resolution no. 91-114, which states that violations of

the regulation will be prosecuted as misdemeanors, and also states that

"[n]othing herein contained shall prevent the County from taking any such

other lawful action as is necessary to prevent or remedy any violations."

The trial court granted Appellee's request for injunction, reasoning that it

had sufficiently proven the threat of irreparable harm, without citation to

R.C. 307.40.  For the following reasons, we sustain Appellants' assignment

of error.

{¶16} The version of R.C. 307.40 "Unlawful construction may be

enjoined" applicable to the facts sub judice had an effective date of

September 11, 1961, and provided as follows:

"No person shall erect, construct, alter, repair, or maintain any *single-family, two-family, or three-family dwellings*, within the unincorporated portion of any county, *wherein the board of county commissioners has enacted building regulations as provided in section 307.37 of the Revised Code*, unless such building regulations are fully complied with." (Emphasis added).

Further, the statute provides that:

"In the event *any building* is being erected, constructed, altered, repaired or maintained in violation of the regulations adopted by resolution under the authority granted by such section, the board, the prosecuting attorney, or the county building inspector of such county or any adjacent, contiguous, or neighboring property owner who would be especially damaged by such violation, in addition to the remedies provided by law, may institute a suit for injunction, abatement, or other appropriate action to prevent such violation of the regulations relating to the erection, construction, alteration, repair, or maintenance of such building."  (Emphasis added).

{¶17} To determine the legislature's intent, we must first look to the plain language of the statute itself. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, 861 N.E.2d 512, at ¶ 9, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 1997-Ohio-310, 676 N.E.2d 519. We must read words and phrases in context and construe them "according to the rules of grammar and common usage." R.C. 1.42.  The above-cited statute expressly refers to single, double or triple family dwellings, which would be residential in nature.  Although Appellants place much emphasis on the latter quoted part of the statute that references "any building;" we conclude, based on the plain language of the statute that the reference to "any building" refers back to the previously stated one, two or three family residential dwellings.

{¶18} Counties may exercise only those powers affirmatively granted by the General Assembly. *Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel*, 67 Ohio St.3d 579, 582, 1993-Ohio-556, 21 N.E.2d 696; citing, *State ex rel. Shriver v. Belmont Cty. Bd. of Commrs.* (1947), 148 Ohio St. 277, 74 N.E.2d 248, paragraph two of the syllabus; *Portage Cty. Bd. of Commrs. v. Gates* (1910), 83 Ohio St. 19, 30, 93 N.E. 255, 259; *Lake Cty. Commrs. v. Ashtabula Cty. Commrs.* (1873), 24 Ohio St. 393, 401. Therefore, in the absence of a specific statutory grant of authority, a board of

county commissioners is powerless to enact legislation related to penalties and/or remedies for violations of floodplain regulations, especially if those penalties conflict with other provisions of the Revised Code.

{¶19} As set forth above, the parties stipulated below that the structure at issue is a non-residential personal use building. Thus, there is no authority under R.C. 307.40 for the granting of injunctive relief to Appellee, as the structure at issue was not residential in nature. See, OAG 65-203 (reasoning that the word "dwellings" as used in RC 307.37 as amended by 129 v 1571, eff. 9-11-61, does not include detached garages, and the deletion of the words "including public or private garages" from such section by amendment excludes detached garages, so a board of county commissioners has no authority under the statutes to adopt, administer and enforce regulations pertaining to the erection, construction, repair, alteration and maintenance of detached garages appurtenant to residential buildings.).

{¶20} Further, with regard to Appellants' reliance on resolution no 91-114's purported penalty provision, we conclude that to the extent the penalty provision conflicts with the Chapter 307 of the Revised Code's penalty provision, it is invalid. Specifically, R.C. 307.99(C) provides that "[w]hoever violates section 307.37 of the Revised Code, shall be fined not more than three hundred dollars." That statute does not provide for

violations of R.C. 307.37 to be prosecuted as misdemeanors, nor does it provide for imposition of injunctive relief (except with regard to residential structures).

{¶21} In light of the foregoing, Appellants' third assignment of error is sustained and the trial court's imposition of injunctive relief is reversed.

ASSIGNMENT OF ERROR IV

{¶22} In their fourth assignment of error, Appellants contend that it was error for the court to grant a mandatory injunction where Appellee's testimony showed the only real threat was an increase in insurance rates. Appellants claim that such harm is not irreparable because it is remedied by an award of money damages and therefore the extraordinary remedy of mandatory injunction is not warranted. In light of our resolution of Appellants' third assignment of error, the fourth assignment of error has been rendered moot.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED.**

Kline, J., concurring.

{¶23} I respectfully concur in judgment only because I find that Ross County had repealed its floodplain regulations prior to any violation by Leonard and Lori Roop (hereinafter the "Roops").

{¶24} In 1981, the Ross County Board of Commissioners and the Ross County Planning Commission developed subdivision regulations, which contained regulations to become eligible for the sale of subsidized flood insurance. The flood regulations were located in "Appendix E" of the 1981 subdivision regulations. The flood regulations contained in Appendix E were a resolution of the Ross County Board of Commissioners that had been adopted March 1, 1976.

{¶25} In 1987, Ross County passed Resolution 87-137, which adopted regulations necessary for participation in the National Flood Insurance Program (hereinafter the "NFIP"). Resolution 87-137 was "incorporated into the said Subdivision Regulations of Ross County, Ohio, as Appendix 'E', and made a part thereof." The resolution also superseded the resolution dated March 1, 1976 (i.e., Appendix E from the 1981 subdivision regulations).

{¶26} In 1991, the county passed Resolution 91-114, which contained floodplain regulations for participation in the NFIP. Resolution 91-114 was incorporated into the subdivision regulations as Appendix E. Resolution 91-114 stated that it superseded Resolution 87-137.

{¶27} In 1996, however, the Ross County Board of Commissioners amended the subdivision regulations and repealed all prior regulations. The

1996 amended subdivision regulations specifically provide that "These regulations shall become effective from and after the date of its approval and adoption * * *. Henceforth, *any other regulations previously adopted by the Ross County Board of Commissioners or Ross County Planning Commission shall be deemed to be repealed.*" Section 103, 1996 amended Ross County subdivision regulations (emphasis added).[3]

{¶28} The 1996 amended subdivision regulations do not mention floodplain regulations. Additionally, Appendix E of the 1996 amended subdivision regulations is entitled "Sample Maintenance Provisions for Private Access Drives." Furthermore, amendments to the subdivision regulations subsequent to 1996 do not mention the floodplain regulations.

{¶29} Thus, I conclude that Ross County, intentionally or inadvertently, repealed its floodplain regulations prior to the Roops erecting their non-residential personal use structure. Therefore, there could be no violation of the regulations, and I concur in judgment only.

---

[3] Section 107 "Relation to Other Laws" of the 1996 amended subdivision regulations did not revive the floodplain regulations that section 103 repealed. Section 107.01 provides that "The provisions of these regulations shall supplement any and all laws of the State of Ohio, resolutions of the County and Townships, or any and all rules and regulations promulgated by authority to such law or resolution relating to the purpose and scope of these regulations." Under section 107, the subdivision regulations presumably supplement subsequent resolutions of the County and Townships or resolutions previously passed by county bodies other than the Board of Commissioners or the Planning Commission. However, section 107 does not support the proposition that the 1996 amended subdivision regulations supplement resolutions that were specifically repealed by section 103.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVRESED IN PART AND THE CAUSE REMANDED and that the Appellee and Appellants split the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J.: Concurs in Judgment Only.
Kline, J.: Concurs in Judgment Only with Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**