Matthias, J.
 

 The first and chief assignment of error urged by plaintiff in error is based upon the refusal of the trial court to receive in evidence the ordinance of the city of Akron, which refusal was based upon the ground that its provisions are in conflict with the provisions of Section 12603, General Code of Ohio.
 

 Although, as stated by the Court of Appeals, with a single exception all of the witnesses who testified as to the speed of defendant’s automobile were of the opinion that it was not in excess of 15 miles per hour, the evidence of the one witness who testified that the speed was greater was competent, its weight being for the jury, and would require the submission of the ordinance, if the same were valid. The importance of the question thus presented is manifest, for, if such ordinance is valid, and was violated by the defendant, then her act constituted negligence
 
 per se,
 
 and it would have been the duty of the court to so instruct the jury.
 

 The claimed invalidity of the ordinance in question is based upon its conflict with general law. It is a police regulation, such as municipalities are authorized to adopt and enforce under authority of Section 3, Article XVIII, of the Constitution of the state. The police power thus conferred by the Constitution cannot be denied municipalities by statute, but that power is restricted, in that such “local police, sanitary and other similar regulations” must not be “in conflict with general laws.” Thus the
 
 *83
 
 legislative branch, of the state government enacts laws to safeguard the peace, health, morals, and safety, and to protect the property of the people of the state, and these are the general laws referred to. They apply to all parts of the state alike. Municipalities may adopt and enforce local regulations covering the same subject so long and so far as the same are not in conflict with general laws. That was clearly determined in
 
 City of Fremont
 
 v.
 
 Keating,
 
 96 Ohio St., 468, 118 N. E., 114. However, the ordinance there in question was in no wise in conflict with general laws; the speed regulations there prescribed being the same as those of the statute.
 

 To the same effect is the decision of this court in
 
 Stange
 
 v.
 
 City of Cleveland,
 
 94 Ohio St., 377, at page 381, 114 N. E., 261, 262, where a local police regulation upon a subject not legislated upon by the state was held valid, but, as there stated, “if, after the statute became effective, the ordinance should conflict in any wise with it, the ordinance of course must yield.” So, also, in
 
 Niehaus, Bldg. Insp.,
 
 v.
 
 State, ex rel. Board of Education,
 
 111 Ohio St., 47, 144 N. E., 433, where the city of Dayton by ordinance sought to exact a fee for the inspection and approval of plans for public school buildings in the absence of any provision by statute authorizing the exaction of a fee for the performance of a duty imposed thereby, this court held the local regulation in conflict with general law and invalid.
 

 Likewise, in the very recent cases of
 
 City of Bucyrus
 
 v.
 
 Department of Health,
 
 120 Ohio St., 426, 166 N. E., 370, and
 
 State, ex rel. Neal, Dir. of Health,
 
 v.
 
 Williams, Mayor,
 
 120 Ohio St., 432, 166 N. E., 377, it was held that the state by general law has full
 
 *84
 
 and complete power in respect to sanitation, that power being unaffected by Article XVIII of the Constitution, for, thereunder, municipalities have only such power as to local sanitary regulations as are not in conflict with general laws enacted by the Legislature. In every similar case where the validity of local police, sanitary, or similar regulations has been sustained, it has been upon the ground of want of conflict with general laws.
 
 Greenburg
 
 v.
 
 City of Cleveland,
 
 98 Ohio St., 282, 120 N. E., 829;
 
 City of East Liverpool
 
 v.
 
 Dawson,
 
 101 Ohio St, 527, 130 N. E., 936;
 
 Village of Struthers
 
 v.
 
 Sokol,
 
 108 Ohio St., 263, 140 N. E., 519.
 

 The following statement found at page 386 of the opinion in the case of
 
 Froelich
 
 v.
 
 City of Cleveland,
 
 99 Ohio St., 376, 124 N. E., 212, 215, is quite pertinent, and though, of course, not controlling, is persuasive: “When the state passes a law which prevents the running of an automobile upon highways faster than at a certain rate, and in the business and closely built-up portions of a city faster than at a certain lesser rate, that is a regulation for the protection of the lives of the people of the whole state and has no special relation to any of the political subdivisions of the state. Such a law applies upon all streets without reference to the character of the street or its structure, except as prescribed by the law itself.”
 

 General laws have been enacted regulating the manner of driving, and particularly the speed of automobiles upon the roads and highways of the state. These laws are safety regulations enacted in the interest of, and for the protection of, the public, and they definitely fix and prescribe the standard
 
 *85
 
 of care that must be exercised in the operation of automobiles throughout the state. They are as follows:
 

 Sec. 12603. “Whoever operates a motor vehicle in and upon the public roads or highways at a speed greater than is reasonable and proper having regard for the width, traffic, use and the general and usual rules of such road or highway, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined as hereinafter provided. A rate of speed greater than fifteen miles an hour in the business or closely built-up portions of a municipal corporation or more than twenty-five miles an hour in other portions thereof, or more than thirty-five miles an hour outside of a municipal corporation, shall be
 
 prima facie
 
 evidence of a rate of speed greater than is reasonable and proper.”
 

 Sec. 12603-1. “Whoever operates a motor vehicle on the public roads or highways without due regard for the safety and rights of pedestrians and drivers and occupants of all other vehicles, and so as to endanger the life, limb or property of any persons while in the lawful use of the roads or highways shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined as hereinafter provided.”
 

 Sec. 12608. “The provisions of section twelve thousand six hundred and three shall not be diminished, restricted or prohibited by an ordinance, rule or regulation of a municipality or other public authority.”
 

 In determining whether the provisions of the ordinance in question conflict with the general law covering the same subject, a proper test may be applied
 
 *86
 
 by the inquiry: Does the ordinance prohibit an act which the statute permits, or permit an act which the statute prohibits?
 
 Village of Struthers
 
 v.
 
 Sokol, supra.
 

 When the law of the state provides that a rate of speed greater than a rate therein specified shall be unlawful, it is equivalent to stating that driving at a less rate of speed shall not be a violation of law; and therefore an ordinance of a municipality which attempts to make unlawful a rate of speed which the state by general law has stamped as lawful would be in conflict therewith. If such conflict does not appear from the mere fact that the ordinance has assumed to prohibit a rate of speed less than that prohibited by statute, and therefore permitted thereby, the consideration of Section 12608, General Code, in connection with Section 12603, General Code, will leave no doubt upon that subject.
 

 The statute does not attempt to deprive municipalities of any power conferred by the Constitution. Its enactment is pursuant to the sovereign police power, with which the regulations adopted by municipalities must conform, under the express and specific terms of limitation imposed upon the power delegated. The legislative intent and purpose is clearly manifest in the statute when it declares that “the provisions of section twelve thousand six hundred and three shall not be diminished, restricted or prohibited by an ordinance, rule or regulation of a municipality or other public authority.” Thus it is clearly and conclusively provided that any rate of speed other than that expressly prohibited must be regarded as permitted. It surely would be absurd to claim that an ordinance which attempted to pro
 
 *87
 
 Mbit an act which a statute has thus declared shall not be prohibited is in harmony with such statute. A local regulation certainly is in conflict with a general law covering the same subject if it attempts to prohibit that which the statute has expressly provided shall not be “diminished, restricted or prohibited.” It is not the province of the court to formulate or declare a policy. We are dealing only with a question of power. The standard of conduct prescribed by statute is that the speed shall not be greater than reasonable and proper, considering the conditions and circumstances there enumerated, and that is the test that must be applied under the statute. The conditions of traffic may be such as to require a much less speed than 15 miles an hour to meet the requirement that the speed shall not be greater than is reasonable and proper. On the other hand, a given speed may be well within the requirement of statute, though somewhat in excess of the rate arbitrarily fixed by ordinance. In this case it does not appear that the alleged injury occurred in the business or closely built-up portion of the city, and, if not, then under the statute a rate of speed must be greater than 25 miles an hour to be even
 
 prima facie
 
 evidence of a speed greater than is reasonable and proper. The legislative body of the municipality has no authority to prescribe a rate of speed or fix or prescribe a standard contrary to or inconsistent with the provisions of statute.
 

 The following cases, among others, supporting our conclusion as to conflict of ordinance and statute are cited:
 
 Mendel
 
 v.
 
 Dorman,
 
 202 Ky., 29, 258 S. W., 936;
 
 Hoigard
 
 v.
 
 Yellow Cab Co.,
 
 320 Ill., 317, 150 N. E., 911;
 
 State
 
 v.
 
 Stallings,
 
 189 N. C., 104, 126
 
 *88
 
 S. E., 187;
 
 Ex parte Daniels,
 
 183 Cal., 636, 192 P., 442, 21 A. L. R., 1172. In the case last cited it was held: “In this case the petitioner had a right to drive on the highway at a speed that was reasonable and proper under all the circumstances, and the fixing of an arbitrary speed limit by the city authorities, restricted that right and was, therefore, in conflict with that right.” Practically the same proposition was presented in that case as is before the court in the instant case. The Constitution of the state of California conferred upon cities the power to pass local regulations not in conflict with general laws.' The statute under consideration in the
 
 Daniels case, supra,
 
 prohibited traveling at an unsafe rate of speed, but in no case in excess of a certain maximum, and then expressly prohibited municipalities from fixing as a maximum a lower rate of speed. The court held that thus was the intention of the Legislature clearly manifested “to declare that the limitation upon speed fixed in the law shall be the only limitation controlling the conduct of the driver of a motor vehicle upon the streets and highways of the state.” It is stated by Wilbur, J., in the majority opinion, that “It seems to have been the legislative purpose, by the declaration that ‘the limitations as to the rate of speed herein fixed shall be exclusive of all other limitations,’ to authorize vehicles to travel at those limits within cities and counties.”
 

 The discussion of the concurring opinion is also pertinent and persuasive: ‘ ‘ Cities and counties have the right given them by the Constitution to pass local regulations not in conflict with the state law, and this right the Legislature cannot prohibit them
 
 *89
 
 from exercising. But the prohibition here involved is not to be viewed solely as a prohibition upon counties and municipalities. It is a prohibition designed for the regulation of the speed of those traveling the highways, and clearly designed for the purpose of permitting such parties to travel subject only to the regulations as to rate of speed provided by the state law. Putting it in another way, if the state law had read that a man traveling the highway should not exceed a certain speed, but should have the right to travel up to that speed, provided it was not unsafe for him to do so under the immediate surrounding conditions, there would have been no prohibition on counties and municipalities involved, and no question as to the validity of such prohibition would have arisen. Nevertheless, any local ordinance fixing a lesser maximum would be invalid, as plainly in conflict with the provision of the state law authorizing any speed not unsafe up to the maximum fixed by it. Now, the only difference between such a reading of the state law and its actual reading is that the permission to travel at any speed, not unsafe, up to the maximum fixed, instead of being couched in the affirmative, is put in the negative. The traveler is told, you may not travel at an unsafe speed and you may not exceed a certain speed —safe or unsafe — but any other limitation upon you is prohibited. This can mean but one thing, and that is that the traveler is authorized to travel at any rate of speed he desires, provided he does not travel at an unsafe rate or exceed the limit fixed. It is merely putting in a negative and roundabout way what could better have been said directly and affirmatively. With such a law a city ordinance fix
 
 *90
 
 ing another and a lower limit is plainly in conflict.”
 

 It was the legislative purpose, clearly manifested by the provisions of Sections 12603 and 12608, General Code, to permit vehicles to travel upon the streets and highways of the state at any rate of speed not expressly prohibited by statute. Any ordinance which prohibits that which is thus clearly permitted by statute is- in conflict therewith, and therefore invalid.
 

 In dealing with the manner of submission of the issue as to speed to the jury, it was further stated in the
 
 Daniels case, supra:
 
 “The question of whether or not the speed traveled is unreasonable and unsafe is a matter for the consideration of the jury, and the scheme of the Legislature authorizes the submission of this question to a jury. * * * The effect of a local ordinance is to foreclose the question of the reasonableness of the speed, and to substitute the judgment of the local legislative body for the judgment of a jury. It is evident that the two plans are in direct Conflict and that the conflict is a very material one.”
 

 In the case at bar the court was required to adopt the alternative of submitting the provisions of the ordinance arbitrarily fixing a speed limit of 15 miles an hour, and of instructing the jury that violation thereof constitutes negligence
 
 per se,
 
 or of refusing to submit such ordinance and applying the provisions of the statute and instructing the jury that under those provisions it should determine from the evidence whether the defendant was driving her automobile at a speed greater than was reasonable and proper. The trial court chose the latter alternative, and fully and properly instructed the jury
 
 *91
 
 relative to the requirements of the statute and the effect of a violation of its provisions, and in that respect the court committed no error.
 

 A further assignment of error alleged is the claimed undue limitation of cross-examination of the witness Greenfield. This witness observed the accident, and upon direct examination testified relative to the occurrence, and also with reference to the speed of the defendant’s automobile, which was just ahead of the truck being driven by the witness. In the course of' the cross-examination, counsel for the plaintiff asked the witness whether in a conversation with counsel the witness had not previously made certain statements to him which were in effect that the defendant was at fault. A mere conclusion or opinion of the witness was sought, which was not competent either upon direct or cross-examination. An inquiry is incompetent which seeks the opinion of the witness upon the ultimate question involved in the case, in this instance the very issue to be submitted to and determined by the jury. Further, the statements which counsel’s questions assumed had been made by the witness were in no wise contradictory to his testimony on direct examination, nor were they competent for the purpose of impeachment. The rule applicable is thus stated in 40 Cyc., 2712: “A witness who gives opinion evidence may be discredited by showing that he has expressed an opinion inconsistent with that expressed by him on the stand; but a witness who testifies as to facts cannot be discredited by a showing of prior expression of opinion by him, even though such expressions tend to contradict the inference which might
 
 *92
 
 be drawn from Ms recital of facts, or are wholly inconsistent with the facts testified to.”
 

 The only other claimed error which need be referred to is the portion of the general charge of the court wherein Section 6310-34, G-eneral Code, was cited and commented upon. Under the facts disclosed by the record, the provisions of this statute are of doubtful application, and, the court having fully and properly defined the duty of the plaintiff in respect to the exercise of ordinary care, it is difficult to see how a reference to such statute could in any wise be prejudicial to the plaintiff.
 

 It follows that the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Kjnkade, Robinson and Jones, JJ., concur.