VILLAGE OF LINNDALE, APPELLEE, v. THE STATE OF OHIO, APPELLANT; CITY OF BLUE ASH, APPELLEE.

[Cite as *Linndale v. State* (1999), 85 Ohio St.3d 52.]

(No. 97–2493—Submitted December 2, 1998—Decided March 24, 1999.)

*Gareau & Dubelko Co., L.P.A.*, and *James M. Dubelko,* for appellee village of Linndale, Ohio.

*Betty D. Montgomery,* Attorney General, *Arthur J. Marziale, Jr., Elizabeth A. Scott* and *Jeffrey B. Hartranft,* Assistant Attorneys General, for appellant.

*Dinsmore & Shohl, L.L.P., Mark A. Vander Laan* and *James V. Schuster,* for appellee city of Blue Ash, Ohio.

COOK, J.  This case turns on the question of whether R.C. 4549.17 is a general or a special law.  If it is a general law, then it prevails over the local traffic laws of affected municipalities because a municipality's police regulation must yield to the state's general police regulation when the two conflict.  If, however, R.C. 4549.17 is not a law applying to citizens generally, but an attempt to limit the powers of a municipal corporation to adopt or to enforce police regulations, it must be struck down as unconstitutional.  Because R.C. 4549.17 is not a general law, we find it unconstitutional as violative of the Home–Rule Amendment.

The Home–Rule Amendment grants to Ohio municipalities "authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws." Section 3, Article XVIII, Ohio Constitution. Thus, a municipality may regulate in an area such as traffic whenever its regulation is not in conflict with the general laws of the state. *Geauga Cty. Bd. of Commrs. v. Munn Rd. Sand & Gravel* (1993), 67 Ohio St.3d 579, 583, 621 N.E.2d 696, 699. "Municipalities in Ohio are authorized to adopt local police, sanitary and other similar regulations * * * and derive no authority from, and are subject to no limitations of, the General Assembly, except that such ordinances shall not be in conflict with general laws." *Struthers v. Sokol* (1923), 108 Ohio St. 263, 140 N.E. 519, syllabus.

The state argues that R.C. 4549.17 is a general law that is part of a comprehensive statewide regulatory scheme covering the interstate highway system and that the General Assembly enacted it to assure the traveling public that law enforcement on the interstate highways was not occurring merely as a revenue-raising plot. Linndale and Blue Ash, on the other hand, posit that R.C. 4549.17 is a special law and therefore cannot rightfully enjoin their police officers from enforcing local traffic laws within their boundaries.

General laws are those enacted by the General Assembly to safeguard the peace, health, morals, and safety and to protect the property of the people of the state. *Schneiderman v. Sesanstein* (1929), 121 Ohio St. 80, 82–83, 167 N.E. 158, 159. General laws "apply to all parts of the state alike." *Id.* at 83, 167 N.E. at 159. This court held in *W. Jefferson v. Robinson* (1965), 1 Ohio St.2d 113, 30 O.O.2d 474, 205 N.E.2d 382, paragraph three of the syllabus, that "[t]he words 'general laws' as set forth in Section 3 of Article XVIII of the Ohio Constitution means [*sic*] statutes setting forth police, sanitary or similar regulations and *not statutes which purport only to grant or to limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations.*" (Emphasis added.) This court also defined general laws as those operating uniformly throughout the state, prescribing a rule of conduct on citizens generally, and operating with general uniform application throughout the state under the same circumstances and conditions. *Garcia v. Siffrin Residential Assn.* (1980), 63 Ohio St.2d 259, 271, 17 O.O.3d 167, 174, 407 N.E.2d 1369, 1377–1378 (citing *Schneiderman, supra*). " 'Once a matter has become of such general interest that it is necessary to make it subject to statewide control so as to require uniform statewide regulation, the municipality can no longer legislate in the field so as to conflict with the state.' " *Ohio Assn. of Private Detective Agencies, Inc. v. N. Olmsted* (1992), 65 Ohio St.3d 242, 244, 602 N.E.2d 1147, 1149, quoting *State ex rel. McElroy v. Akron* (1962), 173 Ohio St. 189, 194, 19 O.O.2d 3, 6, 181 N.E.2d 26, 30.

Given these parameters, we determine that R.C. 4549.17 is not a general law. Because a municipal corporation's authority to regulate traffic comes from the Ohio Constitution, *State v. Parker* (1994), 68 Ohio St.3d 283, 285, 626 N.E.2d 106, 108; see, also, *Munn, supra,* a statute that, like R.C. 4549.17, purports only to limit this constitutionally granted power is not a "general law." *W. Jefferson v. Robinson* (1965), 1 Ohio St.2d 113, 30 O.O.2d 474, 205 N.E.2d 382, paragraph three of the syllabus. As the trial court properly found, R.C. 4549.17 is "simply a limit on the legislative powers of municipal corporations to adopt and enforce specified police regulations." The statute before us is not a part of a system of uniform statewide regulation on the subject of traffic law enforcement. It is a statute that says, in effect, certain cities may not enforce local regulations; precisely the type of statute *West Jefferson* denounced. Moreover, this enactment does not prescribe a rule of conduct upon citizens generally as required by this court. See *Garcia, supra.*

Because R.C. 4549.17 is not a general law, it unconstitutionally impinges on the home-rule powers of the affected municipalities. Having decided that, we, like the court of appeals, need not address whether R.C. 4549.17 violates the Uniformity Clause.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, RESNICK and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., dissents.

F.E. SWEENEY and PFEIFER, JJ., dissent.

---

**PFEIFER, J., dissenting.** We have all heard the quip about the town so small that "Welcome" and "Thanks for Visiting" are contained on the same road sign. Linndale, Ohio, adds another line: "You're Under Arrest."

Linndale has a population somewhere under two hundred. In 1993, according to the state, Linndale police officers issued five thousand traffic citations along the less than half-mile stretch of I–71 that runs through the municipality. If the State Highway Patrol issued tickets at the same per capita rate, it would hand out thirty-three million citations a year. That would be over a thirty-five hundred percent increase over what the patrol did in 1998. This case is not about the sanctity of self-determination. It is about whether a tiny town can use an interstate highway as its personal ATM.

The Home-Rule provision of the Ohio Constitution was meant to protect the ability of local authorities to regulate matters of purely local concern. The power

of local self-government granted by the Constitution relates to the government and administration of internal affairs. In enacting R.C. 4549.17, the state is not trying to tell Linndale how many traffic lights it should have, how to enforce its jaywalking laws, or how many police officers to hire. The state is only trying to run the interstate highway system in an efficient manner. R.C. 4549.17 affects the enforcement of state-imposed speed limits on interstate highways and addresses the potentially dangerous situation of concentrated enforcement of speed limits.

Moreover, the statute is a general law that, as an exercise of the police power, prevails over any conflicting municipal ordinance. The whole idea behind an interstate highway system is its inter-connectedness. What happens in certain stretches of highway can affect the traffic flow of the entire system. Not every stretch of highway in the system has the same speed limit. Certain areas, certain grades, and certain traffic densities require certain attention. Because every regulation does not apply to every mile of roadway equally does not mean that each regulation is not a part of a uniform statewide regulation.

In view of the comprehensive scheme of regulation established by the General Assembly to promote safe travel on the interstate highway system, I would find R.C. 4549.17 not violative of home rule, and therefore constitutional.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.