OPINION
Appellants State of Ohio; Attorney General Betty D. Montgomery; Ohio Board of Building Standards; John W. Brant, Executive Secretary of Ohio Board of Building Standards; Ohio Department of Commerce; and Gary Suhadolnik, Director of Ohio Department of Commerce; appeal a judgment of the Stark County Common Pleas Court declaring R.C. 3781.184
unconstitutional:
 ASSIGNMENT OF ERROR I. THE TRIAL COURT ERRED WHEN IT FOUND R.C. 3781.194 UNCONSTITUTIONAL UNDER THE HOME RULE AMENDMENT BECAUSE IT WAS ENACTED AS PART OF A STATEWIDE, COMPREHENSIVE REGULATORY SCHEME FOR THE PLACEMENT AND TAXATION OF MANUFACTURED HOMES.
 A. THE STATE STATUTE IS A GENERAL LAW BECAUSE IT WAS ENACTED AS PART OF A COMPREHENSIVE REGULATORY SCHEME FOR THE PLACEMENT AND TAXATION OF MANUFACTURED HOMES. B. THE STATE STATUTE HAS STATEWIDE APPLICATION BECAUSE IT OPERATES THROUGHOUT THE STATE AS TO EVERY ENTITY INCLUDED WITHIN ITS OPERATIVE PROVISIONS.
Appellees the City of Canton; Richard Zengler, Zoning Inspector for the City of Canton; and Joseph L. Hunter, individually and on behalf of others similarly situated, filed the instant action in the Stark County Common Pleas Court seeking a declaration that R.C. 3781.184 was unconstitutional. Pursuant to the statute, political subdivisions are prohibited from excluding the placement of permanently sited manufactured homes in any area within the subdivision zoned for single-family residences. Prior to the adoption of this statute, the City of Canton enacted ordinance 2911.11 prohibiting the placement of all manufactured homes anywhere within the city limits. Appellants and appellees filed cross motions for summary judgment. The trial court denied appellants' motion for summary judgment, and granted appellees' motion for summary judgment, declaring the statute unconstitutional. I Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Civ.R. 56 (C). Summary judgment shall not be rendered unless reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Id. We consider summary judgment on the same standard and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35, 36. Canton City Ordinance 1129.11 prohibits manufactured housing units as principle or residential structures in areas of the city zoned for single-family housing. In direct opposition to the Ordinance, R.C. 3781.184 provides in pertinent part: * * * (C)(1) Every manufactured home that is constructed in accordance with the federal standards specified in division (A) of this section and is a permanently sited manufactured home as defined in division (C)(6) of section 3781.06 of the Revised Code shall be a permitted use in any district or zone in which a political subdivision permits single-family homes, and no political subdivision may prohibit or restrict the location of a permanently sited manufactured home in any zone or district in which a single-family home is permitted.
 (2) This division does not limit the authority of a political subdivision to do either of the following:
 (a) Require that a permanently sited manufactured home comply with all zoning requirements that are uniformly imposed on all single-family residences within the district or zone in which the permanently sited manufactured home is or is to be located, except requirements that specify a minimum roof pitch and requirements that do not comply with the standards established pursuant to the "Manufactured Housing Construction and Safety Standards Act of 1974," 88 Stat. 700, 42 U.S.C.A. 5401;
 (b) Prohibit from any residential district or zone, travel trailers, park trailers, and mobile homes, as these terms are defined in section 4501.01 of the Revised Code, and manufactured homes that do not qualify as permanently sited manufactured homes.
(D) This section does not prohibit a private landowner from incorporating a restrictive covenant in a deed, prohibiting the inclusion on the conveyed land of manufactured homes, as defined in division (C)(4) or (6) of section 3781.06 of the Revised Code, or of travel trailers, park trailers, and mobile homes, as defined in section 4501.01 of the Revised Code. This division does not create a new cause of action or substantive legal right for a private landowner to incorporate such a restrictive covenant in a deed. Section 3, Article XVIII, of the Ohio Constitution gives municipalities authority to exercise all powers of local self government and to adopt and enforce within their limits such local police, sanitary and other similar regulations that are not in conflict with general laws of the state. The enactment of zoning ordinances by municipalities is an exercise of police power. Garcia v. Siffrin Residential Ass'n. (1980), 63 Ohio St.2d 259, cert denied (1981),450 U.S. 911. A statute pre-empts a local ordinance when the ordinance is in conflict with the statute, the ordinance is an exercise of police power, rather than local self-government, and the statute is a general law. Ohio Ass'n of Private Detective Agencies, Inc. v. North Olmsted (1992), 65 Ohio St.3d 242 . In the instant case, the parties agreed that the statute and the ordinance are in conflict, and that the City Ordinance is an exercise of police power rather than local self government. Accordingly, the sole issue before this court is whether R.C.3781.184 is general law or a special law. In determining whether a law is general law or a special law, the Ohio Supreme Court has not set forth a bright-line test. However, a review of the key cases in this area reveals certain concepts, changing in focus slightly over time, which the court considers in determining whether a particular enactment is general or special in nature. In Garcia, supra, the court considered the constitutionality of R.C. 5123.18 (D), which provided that any person may operate a licensed family home as a permitted use in a residential district, including any single-family residential district, of any political subdivision. The statute was part of a state law passed to assist developmentally disabled persons by placing these persons in residential settings, rather than in institutional settings. The Ohio Supreme Court concluded that Subsections (D) and (E) of R.C. 5123.18 are not general laws of the state; therefore, the Canton City Zoning Ordinance, which prohibited "family homes" of the type contemplated by the statute, was not unconstitutionally in conflict with a general law of the state. 63 Ohio St.2d 259, syllabus three. General laws are defined as statutes setting forth police, sanitary, or other similar regulations, and not statutes which by their operation only grant or limit the legislative powers of political subdivisions to adopt police, sanitary, or other similar regulations. Id. at 270, citing Village of West Jefferson v. Robinson (1965), 1 Ohio St.2d 113. General laws operate uniformly throughout the State, prescribe a rule of conduct upon citizens generally, and operate with uniform application throughout the state under the same circumstances and conditions. Id. at 271. The court concluded that in the main, the provisions of R.C. Chapter 5123 fall within the definition of a general law, providing a method by which the mentally retarded may potentially be acclimated to a useful place in society through the licensing of residential facilities and the de-institutionalization of mentally retarded individuals. Id. However, Subsections (D), (E), and (G) of R.C. 5123.18, which required municipalities to allow licensed homes in areas zoned for single family residences, are not reasonably related to the valid purposes and objects of the regulatory and licensing portions of the remainder of the law. Id. These specific subsections of the statute unreasonably and unlawfully limited the enforcement of the police powers granted to municipalities by the Ohio Constitution. Id. Twelve years later, the Supreme Court again visited the issue of general versus special laws in Ohio Association of Private Detective Agencies, supra. In that case, the City of North Olmstead enacted an ordinance requiring any person employed within the city as a private policeman, special investigator, or security guard to register with the police department prior to engaging in such employment within the city limits. The city further levied a registration fee of $15.00 on any individual registering pursuant to the ordinance. Violation of the ordinance was punishable as a minor misdemeanor. This ordinance was in direct conflict with R.C. 4749.09, which provided that no license or registration fees shall be charged by any subdivision for conducting the business of private investigation, the business of security services, or both businesses, other than as provided in Chapter R.C. 4749 of the Revised Code. In considering whether the State law was a general or special provision, the Supreme Court defined a general law as one which promotes statewide uniformity. 65 Ohio St.3d at 244. Once a matter has become of such general interest that it is necessary to make it subject to statewide control so as to require uniform statewide regulation, a municipality can no longer legislate in the field so as to conflict with the State. Id., citing State ex rel. McElroy v. Akron (1962),173 Ohio St. 189, 194. However, rather than focusing on this specific subsection of the statute, as the court did in Garcia, the court in Ohio Association of Private Detective Agencies focused on the entire enactment. The court concluded that considered in isolation, the provision which prohibited the imposition of a local registration fee for private security personnel may fail to qualify as a general law, because it prohibited a municipality from exercising a local police power, while not providing for uniform statewide regulation of the same subject matter. Id. at 245. However, the court concluded that consideration of R.C.4749.09 alone is not dispositive of the controversy. Id. Chapter 4749 in its entirety provided uniform statewide regulation of security personnel, and therefore R.C. 4749.09 must be considered a general law of statewide application. Id. Most recently, in 1999, the court considered the constitutionality of a state statute prohibiting local law enforcement officers from issuing speeding and excess weight citations on interstate freeways when the locality has less than 880 yards of the freeway within its jurisdiction, officers must travel outside of their jurisdiction to enter the freeway, and officers enter the freeway with the primary purpose of issuing citations. Village of Linndale v. State of Ohio (1999), 85 Ohio St.3d 52 . The Linndale court defined general laws as those enacted by the General Assembly to safeguard the peace, health, morals, safety, and property of the people of the state. Id. at 54. General laws should not purport only to grant or limit the legislative powers of a political subdivision to adopt or enforce police, sanitary or other similar regulations. Id. General laws operate uniformly throughout the state, prescribe a rule of conduct on citizens generally, and operate with general uniform application throughout the state under the same circumstances and conditions. Id., citing Garcia, supra. Once a matter has become of such general interest that it is necessary to make it subject to statewide control so as to require uniform statewide regulation, the municipality can no longer legislate in the field in conflict with the state. Id., citing Ohio Association of Private Detective Agencies, supra. Under these parameters, the Linndale court concluded that R.C. 4549.17 was not a general law. Id. at 55. The statute was simply a limit on the legislative powers of municipal corporations to adopt and enforce specified police regulations. Id. The statute was not part of a system of uniform statewide regulation on the subject of traffic law enforcement. Id. The statute said, in effect, that certain cities may not enforce local regulations, and did not prescribe a rule of conduct upon citizens generally throughout the state. Id. The court had noted earlier in its opinion that approximately 25 municipal corporations within the state met the geographic criteria specified in the statute. Id. at 52-53. Under the evolving framework established by these three cases, we conclude that we must view R.C. 3781.184 in its entirety, rather than concentrating solely Subsection (C), to determine if the law is a general law or a special law. While the Garcia court focused on one subsection of the statute in question, the Ohio Supreme Court in more recent cases has looked at the entire enactment to determine if the statute in its entirety provides uniform state regulation over an area of such general interest that it is necessary to make it subject to statewide control. Under this standard, we conclude that this statute is a general law. Developments in the construction industry over the past few decades have presented a matter of statewide concern. At one time, the industry presented a clear contrast between a traditional mobile home, and a single family home constructed entirely on site. However, this landscape has been significantly altered by developments in the construction industry, allowing the prefabrication of component parts, not fabricated on site, which are shipped to the building site and pieced together to construct the home. These "manufactured homes" can range from housing shipped almost intact, with an appearance similar to the traditional mobile home, to log homes fabricated in pieces at remote sites, and pieced together into homes with values of $1,000,000 or more. As developments in the construction industry moved at a faster pace than legislation, the definition of "manufactured home" became unclear. These developments further undermine the validity of the assumption that manufactured housing lowers neighboring property values, an assumption underlying many local zoning ordinances. R.C. 3781.184, taken in its entirety, is an attempt to provide statewide uniformity of the definition of a manufactured home, and to recognize housing which complies with certain standards as a single-family residence, whether constructed on site or off site. R.C. 3781.184 (A) provides that all manufactured homes, as defined in R.C. 3781.06 of the Revised Code, must be constructed in accordance with federal construction and safety standards developed specifically for manufactured housing. Subsection (B) requires such homes that are constructed in accordance with federal standards to have a permanent label or tag, certifying such compliance. The statute thus does not serve merely to limit the zoning power of political subdivisions, but serves to clarify the definition of a permanently sited manufactured home, and to require compliance with safety standards. While the statute does require cities to recognize manufactured housing complying with such standards as valid single-family homes, the statute does not limit the authority of political subdivisions to require such homes to comply with all zoning requirements that are uniformly imposed on a single-family residences, except requirements specifying a minimum roof pitch, and requirements that do not comply with the standards established by the federal government for manufactured housing. The statute further allows political subdivisions to regulate travel trailers, park trailers, mobile homes, and manufactured homes that do not qualify under the state's definition of permanently sited manufactured homes. Viewed in its entirety, the portions of R.C. Chapter 3781 dealing with manufactured housing provide uniform statewide regulation of manufactured housing in the same manner that R.C. 4749 provided statewide regulation of security personnel. Therefore, R.C. 3781.184 is a general law of statewide application. Further, we disagree with the trial court's conclusion that R.C. 3781.184 (D), which retains the right of a private landowner to prohibit manufactured housing by restrictive covenant, renders the statute unconstitutional. Appellees argue that this section of the statute prevents the law from having uniform statewide application, and renders the enactment a special law rather than a general law. We disagree, as the statute applies to all political subdivisions equally, thus applying to all municipalities, all villages, and all townships throughout the state. The requirement of uniform operation throughout the state does not forbid different treatment of various classes and types of citizens, but prohibits non-uniform classification if such classification is arbitrary, unreasonable, or capricious. Garcia, supra, at 272. In Garcia, the statute in question created two distinct classes of municipalities, depending on the effective date of the municipal ordinances specifically permitting licensed residential facilities in residential zones. The court concluded that the classification was based upon a time requirement which is arbitrary in nature, rendering the statute unconstitutional. Id. Similarly, in Linndale, supra, the statute affected approximately 25 municipalities throughout the state. In the instant case, all political subdivisions are treated equally. The decision to recognize the right of private citizens to enter into contracts excluding manufactured housing is not arbitrary, unreasonable, or capricious, and thus the statute does not run afoul of the requirement of uniform operation throughout the state. The assignment of error is sustained.
The judgment of the Stark County Common Pleas Court is reversed. Pursuant to App.R. 12 (B), we hereby enter final judgment declaring R.C.3781.184 to be constitutional.
By GWIN, P.J., and Wise, J., concur HOFFMAN, J., dissents
HOFFMAN, J., dissenting.
I respectfully dissent from the majority opinion although I do agree a review of the case law eminating from the Ohio Supreme Court has failed to establish a bright-line test for analyzing the issue presented in this case. As stated by the majority, the sole issue before this Court is whether R.C. 3781.184 is a general law or a special law. For the reasons that follow, I find R.C. 3781.184 is a special law. Garcia v. Siffrin Residential Ass'n. (1980), 63 Ohio St.2d 259, provides perhaps the most definitive explanation as to when a law is a general law or a special law. It states: "General laws" are defined to mean statutes setting forth police, sanitary or other similar regulations, and not statutes which by their operation only grant or limit the legislative powers of a municipal corporation to adopt or enforce police, sanitary or other similar regulations. (Citations omitted).
* * *
These "general laws" are laws operating uniformly throughout the state, * * * which prescribe a rule of conduct upon citizens generally, and which operate with general uniform application throughout the state under the same circumstances and conditions.
* * * Id. at 273.
In Village of Linndale v. State of Ohio (1999), 85 Ohio St.3d 52, the sole issue before the Court was whether a state statute was a general law or a special law. In finding the statute at issue therein to be a special law, the Court's analysis turned on the above-quoted definition of "general law" set forth in Garcia. The Supreme Court stated: If it is a general law, then it prevails over the local traffic laws of affected municipalities because a municipality's police regulation must yield to the state's general police regulation when the two conflict. If, however, [the statute] is not a law applying to citizens generally, but an attempt to limit the powers of a municipal corporation to adopt or to enforce police regulations, it must be struck down as unconstitutional. (Emphasis added). Id. at 54.
The Village of Linndale challenged the constitutionality of a statute which prohibited local law enforcement officers from issuing speeding tickets and/or excess weight citations on interstate freeways when (1) the locality had less than 880 yards of interstate freeway jurisdiction; (2) the local law enforcement officers had to travel outside their jurisdiction to enter onto the interstate freeway within its jurisdiction, and (3) the local law enforcement officers entered the freeway with the primary purpose of issuing citations for speed or weight violations. The Ohio Supreme Court found this statute was "simply a limit on the legislative powers of a municipal corporations to adopt and enforce specified police regulations," and not a part of a system of statewide regulation on the subject of traffic enforcement. Id. at 55. The Court stated: "It is a statute that says, in effect, certain cities may not enforce local regulations * * *." Id. Using the reasoning set forth above, I would find R.C. 3781.184 to be a special law. Although the appellant maintains the statute is a general law because it is uniformly applied to all political subdivisions within the State of Ohio, uniform application is not the only criterion necessary in determining whether a law is general or specific. The definition contained in Garcia, and cited with approval in Linndale, requires an examination of whether the statute, by its operation, only grants or limits the legislative powers of municipal corporation to adopt or enforce a zoning regulation. Further, the Garcia court examined whether the law prescribes a rule of conduct upon citizens generally, and which operates with a general uniform application throughout the state. I find R.C. 3781.184 would fail under both tests. Reviewing the first test set forth in Garcia, I find R.C.3781.184(C) contains more than just an "operative limitation" of legislative power. On its face, the statute contains an express prohibition of just such an exercise of power. The statute explicitly prohibits "political subdivisions [from] restrict[ing] the location of a permanently sited manufactured home in any zone or district in which a single-family home is permitted." R.C. 3781.184(C)(1). This portion has no purpose other than to limit a municipal corporation's legislative power. I find this prohibition, like the statute in Linndale, supra, makes R.C. 3781.184(C) a special law. Furthermore, the Supreme Court in Linndale found the statute therein did not prescribe a rule of conduct upon citizens generally. For the same reasons expressed in Linndale, I would find the statute at issue herein fails the second test enunciated in Garcia, by failing to prescribe a rule of conduct upon citizens generally. I find R.C. 3781.184 to be a special law because it fails under both tests set forth in Garcia, supra. The statute, on its face, limits the power of a municipal corporation to adopt or enforce zoning regulations, and fails to prescribe a rule of conduct upon citizens generally. I would overrule appellant's assignment of error and affirm the decision of the trial court.